McKinney, J.
delivered the opinion of the court.
The facts material to be noticed in this case, are as follows: In the early part of the year 1836, Samuel Overton died intestate, in the parish of Carroll, State of Louisiana, the place of his domicil, without lawful issue, never having been married. He left an estate of considerable value, consisting of lands, slaves, and other personal property. His next of kin and heirs at law, were Jesse Overton and Cassandra Byus, wife of James Byus, who were citizens of Maury county, in this state; Thomas J. Overton, who resided in Mississippi, and the complainant and his brother John 0. Patton; the *193 former was a citizen of this state, the latter resided in Louisiana. Jesse Overton and Cassandra Byus, were brother and sister of the whole blood. Thomas J. Overton was a brother of the half blood, and complainant and John O. Patton were the only children of Martha Patton, a sister of the whole blood, who died in 1815.
In the month of April 1836, the said Jesse Overton, Thomas J. Overton, James Byus and wife, applied to the probate court of the Parish of Carroll, Louisiana, to have themselves recognized as the legal heirs of'the said Samuel Overton, and to have the curatorship, or administration of his succession taken out of the hands of said John O. Patton, to whom it had been previously committed by said court, and to have the same placed in their hands. A decree to this effect was made, and they were put in possession of- the succession, and were appointed curators, or administrators thereof, without security. Under this appointment, they received into their possession twelve slaves, and perhaps other property. They immediately proceeded to make a division of said slaves among themselves, and very shortly afterwards, the defendants Jesse Overton and Byus and wife, returned to Tennessee, bringing with them their respective slaves, and have ever since held the same. The complainant was absent and had no participation in the division of said slaves. The right of the complainant, John O. Patton, to any share of slaves, was denied by the defendants, upon the ground, as they alledged, that by the law of Louisiana, the surviving brothers and sisters of the' intestate were alone entitled to inherit his estate. It does not appear that the defendants paid any debts of the estate, or performed any duties appertaining to their office of curator, or administrator in Louisiana or' elsewhere; neither does it appear that there were any debts due from the estate, except a claim set up by the plaintiff, John O. Patton, *194 which is denied by the other defendants, and of which there is no proof.
The complainant alledges, that he has acquired the interest, of John O. Patton, in said succession of Samuel Overton; and that he is, therefore, entitled to one-fourth of said slaves, money, and other effects received by said administrators in Louisiana, in virtue of their said appointment. The defendants deny having received money, or other property belonging to said succession, except the slaves, and there is no proof to the contrary. They alledge, that the defendant, John 0. Patton, took into his possession and squandered the money and other assets, before their appointment, and the slaves are really the only matter in controversy in this cause. The chancellor f decreed for the complainants, and the defendants, except John 0. Patton, prosecute an appeal to this court.
The right of the complainant and John 0. Patton to represent their mother in the succession of Samuel Overton, equally with the surviving brothers and sister, by the law of Louisiana, is not controverted in argument here, nor can it be. See Civil Code of Louisiana, article 890-3. The relief sought by the bill is resisted upon other grounds.
First. It is insisted, that the slaves in question having been received and brought into this state by the defendants, in the character of administrators, in virtue of the administration granted by the probate court of Louisiana, they are not liable to be sued here, either by creditors or distributees of the estate of Samuel Overtoil; that they are alone answerable to the tribunals of the state’ where the administration was granted. The complainant cannot be repelled upon this ground. It is certainly true, that a foreign administration is not liable to be sued, in that character, in the courts of this state, in virtue of the foreign letters of administration, as has been repeatedly declared by this court. 10 Yerg. 283. 2 Hum. 224. 6 Hum. *195 61. But consistently with this principle, it is well settled, that such foreign administrator 'may be liable to be sued in our courts, not, indeed, in his character of foreign administrator, but in the distinct character of trustee for the creditors or next of kin of the estate. In the case of Alsup vs. Alsup et als. 10 Yerg. 283, it was so determined by this court.
In that case administration upon the estate ,of Thomas H. Alsup, who died intestate, was granted to three of the defendants, two of whom were citizens of this state, by the probate court of Lauderdale county, in the State of Alabama, where was the domicil of the intestate. The bill was brought by a creditor of the estate, to reach a surplus fund in the hands of the administrator. And it was held, that upon a final settlement of the administration in Alabama, a court of chancery in this state had jurisdiction to interpose between the administrators and distributees, in favor of a creditor, and to decree that the former, in their character as trustees, should pay over to the complainant any surplus in their hands, in satisfaction of his judgment. And in the absence of creditors, the same relief will be decreed in favor of the distributees of the estate. And not only will such relief be decreed in our courts, in favor of creditors or distributees, when a surplus remains in the hands of the administrator undisposed of, after final settlement of the administration ■ in the state or county where the same was granted; but in a case like the present, where the administrators, without administering or distributing the assets, or making any settlement of the administration, in the foreign tribunal, in violation of their duty and in fraud of the rights of the creditors and distributees, remove the funds, or specific property belonging to the estate, and bring the same within our local jurisdiction, they will be held to account here, as trustees, and will be decreed, either at the instance of creditors, or next of kin of the intestate, to surrender such trust *196 funds or property. If it were otherwise held in this case, there would be a total faihtre of justice. The complainant cannot resort to the courts of Louisiana for redress, because no security was given in the probate court by the administrators. But had security been given, no such resort would be necessary — a court of chancery in this state, having jurisdiction of the person, is fully competent, in our opinion, to afford adequate relief; and were there nothing more in this cause, we should have no hesitation in affirming the decree of the chancellor.
But it is contended, secondly, that the statute of limitations interposes a bar to any relief in favor of the. complainant in this cause. In answer to this, it is argued by the counsel of complainant, that this is an express trust, to which the statute cannot apply. It is true, the statute of limitations does not apply to an express or technical trust, so long as the trust subsists, yet the settled doctrine of courts of equity is, that if the trustee openly denies the right of his cestui que trust, and assumes the absolute adverse ownership of the trust property, the 'statute will attach from the time a knowledge of the denial or the • repudiation of the trust is brought home to the cestui que trust. Angel on Lim. 171. 4 Mason, 152. 2 Jac. & Walker’s Ch. R. 1. Again: It is said,sthere is no proof in this record that the complainant had knowledge of the division of the slaves in controversy, or of the adverse claim of the defendants; and of this opinion was the chancellor. We think otherwise.
The bill in direct terms alledges, that a division of the slaves had been made among the defendants, and that they had respectively held possession thereof eyer since said divi-siod. It further alledges, that the slaves and other property of the estate had been removed from Louisiana for the purpose 'af defrauding the complainant, and that the defendants had *197 at' all times fraudulently refused to account with him for,his share of the same. In, addition,, a special interrogatory is put in the bill, whether the defendants had not made a division of said slaves and other property, and when, under what circumstances, and by what authority ? In answer to which they state, that they made a division of said slaves in October 1836, and have ever since held and claimed them as their own property, adversely to all other persons; and they plead and rely on the statute of limitations. There is no necessity for other proof on this point.
The bill admits a knowledge of the division, and an adverse holding of the slaves thereafter; and the time when such adverse claim and possession, commenced is stated in the answer, which is made evidence by the interrogatory put in the bill. Upon this ground, we are constrained to refuse relief to the complainant.
The decree of the chancellor will be reversed, and the bill dismissed, but the defendants will pay all the costs in this court, as well as in the court below.